Before I begin, I'd like to reserve three minutes of my time for rebuttal. It's fine. Just mind your own time, please. The clock will count down. Actually, can I adjust this up just a little bit? Do whatever you want. You bet. Okay? All right. I think that's good. Okay. Good morning. Good morning. May it please the Court, I'm Teresa DeMonte, appearing on behalf of defendant appellant Cory Eglash. I'd like to first address the insufficiency of the evidence to sustain the mail fraud and false statement convictions, and next address the District Court's erroneous exclusion of Gail Frumdall's disciplinary records. First, the mail fraud. Here, the government failed to prove the element of a mailing, but it is this jurisdictional element that gives the federal government the ability to prosecute under the statute. There's two elements to this argument, two aspects, I should say. The first is that the government failed to prove that the charged items were actually mailed. Do I understand correctly that of this government we have, which is billions of people, tons of mail, that our court demands that somebody says, I remember putting into the mailbox this particular item? Does your argument go that far? No, Your Honor. Certainly that would be sufficient testimony to prove that. It would be nice if they had memories like that, but we have to have computers for that. Of course. So the person says in answer to questions, I would have mailed that, or in my practice, I would have mailed that. You're saying that is insufficient. So there's two. Yes, I would say that that's insufficient. There's two ways. Don't we hear testimony like that all the time, that it's the routine course of business to have mailed something? No. We hear that a lot. If a routine practice was an accepted form of evidence and the people could testify to it and the jury was allowed to infer from routine practice. Yes, Your Honor. I think you both hit the nail on the head. What's wrong with that? I'm sorry, what's wrong with that? Getting back to Judge Wallace's question, what is it that they failed to do here in this trial? They failed to do what you just said, which was to testify that there was a routine practice. As this court said in U.S. v. Donditch, the record must contain evidence of custom and usage before an inference can be drawn that the customary course of events was probably followed in the specific case. And that's what we're lacking here. Because someone didn't say that. That's right. What paper are we talking about right now? What people? No. What paper? If I wrote a letter at home in Fairbanks, Alaska, and it arrived here at court in Seattle, and I hadn't sent it to FedEx or UPS, the inference could be drawn that it was mailed. What piece of paper are we talking about right now where your contention is that there's not a sufficient basis to show it was mailed? All four of the items that are at issue, I contend that there's not a sufficient basis to show they were mailed. Okay, counsel, so if we look at ER 112 to get to Judge Kleinfeld's question, he's got an address, right? It's 2. It tells us 2. It's 2. And then we have, moving through the exhibit at ER 116, 117, we have the written responses. This is a form asking your client for information, and there's the written responses there from your client, right? So we have pretty good evidentiary support that it was mailed and received. Your Honor, respectfully, I would disagree. I think that putting an address on a letter, the envelope, is not an evidence. Well, for count 3, the Social Security employee testified, I would have sent the mailing they're talking about through our computer system, and it would have printed out and sent to Inglis via mail. Count 4, Social Security testified this letter was placed in the mail and sent on or about the date listed in the letter. Count 5, Social Security said this form would have been sent to the same. In all of the counts, the government, I'm surprised they got such good evidence, but in all of the counts, there's something where someone came in and says this letter would have been sent. Yes. And you're saying that's insufficient? Your Honor, my response, especially with respect to counts 4 and 5, the witnesses there did, in conclusory fashion, assert that the items were mailed, and that in itself might be sufficient, except that their other testimony made it clear that they didn't have any direct knowledge of those claims or those forms at issue. Instead, they reviewed them in anticipation of testifying at trial, and the government has conceded this, both in its briefing below and in its briefing here. Instead, the government contends that for these three counts, there was sufficient custom and practice testimony, and that's what they were testifying to. And the government says this is just like this Court's decisions in Green and Brackenridge. But if you look at those cases there, the evidence of custom and practice is quite robust. Usually our evidence, usually when this sort of thing comes into contention, what you have is somebody saying, I never got it. I don't think it was ever mailed to me. But we don't have that here. I can imagine another kind of case where some showing might be made, these people never use the U.S. mails. They always FedEx everything. But that's not here. Mailing something, putting it in the outbox, and the mailroom person picks it up and it goes in the mail, is a very small event in the lives of most people who work in offices. And frankly, it's hard for me to imagine any more than that coming up in most cases. Your Honor, you're right that that's a small event, but it's a critical element of this crime. And what you just described was exactly the testimony in Green. There was a testimony that the company had a routine custom and practice of taking the mail from the outgoing mailbox and depositing it into the United States mail. There was also testimony that the item at issue was placed in that outgoing box, which would allow an inference to be drawn that that item was introduced into that custom and practice. Here we don't have any evidence of custom and practice. They don't say that the agency usually mails these kinds of items to a client or that they generally mail things. I'm going to ask you to direct your attention at the other part of your argument because your time is ticking. Yes. So you have another argument that some of these mailings, well, that's really my question, whether your other argument applies to all four counts. No. Because your other argument is that some of the mailings weren't really in furtherance of fraud, and I think that's your argument for counts four and six? That's correct. But not three and five? Not three and five. Would you like to address that? Yes. Three and five, we can see that those items would have furthered a fraudulent scheme. The government here contends that so long as a mailing is a result of or a consequence of some sort of scheme, it falls within the reach of a mail fraud statute. But this is not the law. In fact, the Supreme Court in the United States v. Mays explicitly rejected this argument, saying Congress could have drafted the mail fraud statute so as to require only that the mails be in fact used as a result of the scheme, but it didn't do so. And the standard that's embodied in the statute is that a mailing must be for the purpose of executing the scheme. This isn't a statute that uses language like in connection with or as a consequence of. The completion of the scheme, therefore, must be in some way dependent upon the mailing. And here there's no evidence that for the items at counts four and six that they in any way advanced the scheme. There was no testimony at trial that the defendants did anything with these items or that they were expected to. There wasn't testimony that they were critical parts of disability, that they were obtaining these items with some sort of prerequisite to obtaining the check. Neither side cited what I thought was an important case, United States v. Brown, which was a case that was filed in November of 2014. So it's been around for a while. Are you familiar with United States v. Brown? I've seen United States v. Brown, yes, the bankruptcy case. You didn't cite that to us, and I thought that was the most important case. As you recall, that was a bankruptcy case. That's right. And there they sent out notices, and the case was very clear that that was an integral part of the bankruptcy, and therefore it was considered sufficient. I don't see a difference between your case and the Brown case. I mean, there's always differences, but for the point of law, it seems to be Brown controls, and I don't see how you can win on Brown. Respectfully, Your Honor, I disagree. Well, you should disagree if you disagree, but tell me why. Because in Brown there was testimony. There was testimony that sending out that notice of discharge was a prerequisite for the notice of bankruptcy, was a prerequisite for obtaining the discharge, and that the discharge itself was the very fruit of the scheme. Sure. There was testimony that those mailings. In your case, there's a stat, you know, they do this, and then they do this, and do this. So they send out this by mail, and then they send out this by mail. It's the way the government works. They do something and give you a chance to know what's going on. But that's the same as in Brown. In Brown they give out notices of the process. Why is that different? Because here there was no testimony and no evidence from which a jury could draw the conclusion that those mailings advanced the scheme in any way. I think you pushed it forward. Okay, so your argument is that it had reached fruition by the time Exhibit No. No, Your Honor. Not that the fraud had reached fruition. Not that the fraud had reached fruition, just that a mailing needs to somehow push the scheme forward. Well, right. That's my point. And your argument is that by the time Exhibit 4 came along, it was over. No. Exhibit 4 is a notice that she's been awarded the benefit. Yes, but the government's conception is that the scheme continued through his application as well. The argument instead is, you know, if I have a scheme to try to obtain benefits and I talk to somebody and they send me a mailing saying, nice talking to you, that doesn't push the scheme forward in any way. And here that's what the application summary did. It just purported to summarize the statements Mr. Eglass made. No, no, no. You're confusing Exhibits 4 and 6. Oh, no. 4 is the notice of disability award. Right, right. So you want to revisit your earlier comment. 6 just is the summary. He'd already given the telephonic interview, and 6 is the summary. That's right. So that goes to your fruition argument. To the extent that was fraudulent, it didn't involve mail because it was over by then. Those statements were, right, Exhibit 6 is just a summary of what was said telephonically, isn't it? Yes, it's just a summary. It says we've already put this in our computer. Yes, it's just a summary. Okay, I think you confuse Exhibit 4 and 6, though. So could you, just to make sure we're clear, go back and address Exhibit 4? This is the one from SSA to Ramona Hayes, notifying her that she should receive the benefits. And this really goes to Judge Wallace's question about the Brown case. Yes. So unlike in Brown, there was no testimony that receiving this notice was any sort of prerequisite to getting the checks, which were the fruits of the scheme. There was just a lack of… Why wouldn't it be in furtherance of the scheme? First, we make sure that the female's benefits, I can't remember if they're married or not. First, we make sure that her benefits are nailed down. And then once her benefits are nailed down, then we go after phony benefits for him. I think that that's right. But regardless, there was… If they were both pending at the same time, they'll cast doubt on each other. Exactly, but there was no evidence that obtaining that notice in any way pushed any of the fraud forward. Why couldn't a jury just infer that they'd want that file closed before cranking the next one up? There was no testimony or evidence from which sending out that notice did anything to close anything. I'm still struggling with why this notice, that the awards were going to be given to her, differs from the bankruptcy notice in Brown. Because that said, okay, we're discharging, right? Because in Brown, what they sought was the actual discharge itself. Well, here she's seeking these benefits. Right. So how do they differ? There wasn't testimony that getting notice of the benefits was of itself of any significance. That the scheme would have changed at all in any way if those notices had not been sent out. Unlike in Brown, where without a notice of discharge, there is no fruit of the fraud. Where do you get the pushed forward? Where's the push forward theory? That comes from the court's language, the Supreme Court, that a mailing must be a step in the plot. It must in some way further the scheme. Okay. And Brown says the trial testimony established that the mailings to creditors were an integral part of the bankruptcy. That's right. So if this is an integral part of the collection of Social Security benefits, you would agree that it meets Brown? Yes. But in this case, there was no testimony. There wasn't testimony that these forms were required to be sent, that they just seemed to be purely fortuitous. I see that I'm running out of time. He gets to keep asking questions. He has to answer the questions anyway. What the heck. So why isn't it an integral part? I mean, do you need testimony if it's obvious on his face that this is the process they're proceeding and they mail? I just don't get the understanding of what more you need to meet the Brown test. Your Honor, I think that the standard that you just said is that consequence of or result of a scheme. But just because something is the result of a process doesn't mean that it in any way furthers or advances the fraudulent scheme. But if it's an integral part of the scheme, that seems to me the key words of Brown. I think the jury needs a basis from which to infer that it is, in fact, an integral part of the scheme and not just a merely fortuitous or, you know, cumulative mailing. Wouldn't they go to all the time to send these out and spend money and time? Isn't that circumstantial evidence that it is an integral part of the process? That is, unless they send these out and tell you you get them, you don't get them. I mean, it's an integral part of the process. And I don't see where you have to have testimony that pushes it forward. If it isn't done, they never get the check. And that's what I'm having a problem with that argument. Help me out. I think exactly what you said. If it isn't done, they don't get the check. And there was no basis for the jury to find that, what you just said, that if this didn't happen, they wouldn't get the check. That's why this case isn't like Serang or Leiper, the cases the government cites where in which, you know, the mailings, there was, Serang was the insurance fraud case. There, the company, the insurance company sent a mailing to its attorney. The attorney is saying, here's the claim. The attorney mails the two defendants saying, I need your statements under oath. They mail their statements back to him and then they mail a debris check. All those mailings advance the scheme in some way. I'm disappointed you didn't cite Schmuck because it's my favorite case since it involves a crooked used car salesman and it's named Schmuck. I love the case. I know. Schmuck versus the United States. You know who's going to win that one. Yeah, right. And with good reason, apparently, since he was putting the odometers back. But the language there, getting to Judge Wallace's point, in Schmuck and in Ginian really talks about, I think, about how the fraud was conceived of. This is how I've understood it. I'm really proposing counsel as well because these, I think, are for me the crux of this issue, whether they're using the mails to perpetuate a fraud. And in Schmuck, for example, and in Ginian, there was strong evidence that perhaps the bad deed was done because perhaps they had the money. And the question was, no, before any mailing was used. But in those cases, the convictions were affirmed because mails were used in order to cover up the fraud so they could continue to perpetrate because it was a series of bad acts in those cases. So those make sense to me. So that's why I think we've been trying to get you to drill down on how to distinguish those cases from Brown. Because apart from that, it seems to me you have a very strong argument on count four, since I think it was over by then. I mean, that's really the nub of it for her, at least in my view. So thank you for your argument. We'll get you to come back in a minute. We'll give you a little more time. Thank you, Your Honor. So you've been able to sit and listen. And I think you know what's bothering us. Well, may it please the Court. I'm Tom Woods, and I represent the United States. Counts four and six were incident to an essential part of the scheme. That's the legal standard the Court has. That comes from the low case that we cited. And if we could look at those two mailings, count six and count four. Count six is an important document. It is a summary of the representations and, in fact, the misrepresentations that the defendant made. But how does that perpetrate the scheme? He'd already made them telephonically. For two reasons. One, the process is still unfolding at this point. It's not as if there had been a decision by that point when the applicant – Well, the government's using the mail to send something back to him. That's correct, and perhaps this goes back to the words of Brown. This is part of the adjudication process. What is the steps in the process? But the United States Supreme Court said in Schmuck we have to look at the fraud as the defendant conceived it at the time. And what is he conceiving at the time? He is conceiving, I am going to defraud the Social Security Administration and ultimately receive benefits. In a nutshell, that is the fraud that's being perpetrated here. To do that, what does the defendant need to do? He needs to go through and complete the adjudication process. So he said your theory is that – and there was quite considerable evidence that he gave this telephonic interview and reported a bunch of statements that weren't true. Correct. Then the government summarized those and said we've already put these in our computer and here's the summary. And that's important for two reasons. One, these are posts on the way. If that's enough, what would prevent the government from sending out six of these notices and charging him six times? I think each would be a separate count. And one of the things the court – You think the government could charge him six times if they sent out six of these notices? I think, for example, let's use the analogy – That was just a yes or no. Yes. And I would say – I don't get why you use the government's mailings as a basis for a charge of using the mail to perpetrate a fraud. Why not use the defendant's mailings? Do both. And the statute talks about either mailing or cause to be mailed. Well, cause to be mailed, the usual application of that is the crooked boss has his innocent secretary take care of the mail. I would say that cause to be mailed, and there are cases that talk about – The government's not perpetrating the fraud. The charge is that Eglash perpetrates the fraud. So I don't understand why you don't use mailings that Eglash either mails or he would cause something to be mailed if he asked his kid, hey, you're going into town, drop this in a mailbox on your way. We could, but I would refer the court to the Schmuck case that the court referenced. There, the mailings, if I remember correctly, were done by the dealers, which the decision described as not being part of the scheme. No, no. Just the opposite. Just the opposite. It was in order to get the license so the title would – so he could perpetuate the continuing fraud. Perpetuate the fraud, but the actual person who did the mail. In most states, you can't get title without an odometer statement. Right. So the Schmuck, the guy whose name I'm so fond of, conceived originally of a scheme where that would happen so that he'd get the title back so that he could perpetuate and continue. Yes. Right. So that really gets to the point of Judge Kleinfeld's question. In this case, what we're trying to figure out with Exhibit 6 in particular is what evidence is there that the defendant conceived, in the words of Schmuck, the United States Supreme Court really conceived that this would happen, particularly as to Exhibit 6 where this is a summary of what he'd said on the phone, the government sending it to him. Why would he expect that they're going to do this? The word conceive, I think, let's talk about what it is the defendant's conceiving. I think that's the critical point. Okay. And I think what the cases say, it is the scheme the defendant is conceiving. It's not the specific mailing. It's not as if the defendant, we look at this as what did the defendant sit down at the time he came up with this scheme and figure out how many mailings would occur. No, it's what is the scheme that the defendant conceived of? And that scheme was to go through and complete the adjudication process. Well, the scheme is to collect disability payments when he's not disabled. Correct. That's the fraudulent scheme. Correct. And to do that, the essential part of that— Oh, I'm terribly disabled when he's not. That's a mailing further into the scheme. Yes. As is any— If the government sent back something saying, nope, you're not, I don't see how that would be a mailing that he caused to be made that was further into the scheme. If the answer was you're not, I think that might be correct. But that's, of course, not what happened here, which is these are mailings that are part and parcel of the adjudication process. When you look at Count 6, it's not an innocuous document. It is the document that captures the very essence of the misrepresentations and, importantly— But the misrepresentations were communicated telephonically, not by mail. But that mailing gives the defendant the opportunity to correct, to essentially affirm by doing nothing when you get that— Actually, that is a question I had. Did he respond to that? No. He didn't. These misrepresentations carried through. What bothers me here is when something is charged funny, it makes me wonder who's trying to hide the ball from me. If the wrongdoing is by phone, you expect it to be charged as wire fraud. If it's mail fraud, you expect to see something that the guy mailed or had mailed for him. It's just charged funny, and that's what I can't make out. It makes me suspicious, even though I understand your arguments. Why is it charged so funny? This could have been charged as wire fraud, and that was the answer to Your Honor's question about— It's not enough to say, well, we expect the courts to bail us out when we screw up on how we charge things. You are positing a different way this case could have been charged here where— In a normal way. I think this is entirely appropriate, and it's particularly because think about the first part of this argument that we had this morning, which is how were these items mailed? Sure, I guess if we had the return envelope where it was stamped. That's a different argument. It is, but it may show why one of the ways of charging the case this way is to show the actual mailing occurred, is by calling the very employees who would have dealt with these types of forms, establishing the mailing. That is one reason you might charge the case this way, is you now put in the hands of the Social Security Administration employees to talk about how did these items get to or how did they leave the facility they left by mail. I'm just responding to the question about why you might charge the case this way. I will say, Your Honor, you talked about multiple mailings, and the case of wire fraud is the perfect example. In wire fraud cases, there are often numerous wires, numerous. There's often numerous electronic communications, numerous phone calls, and what the government does is it selects a representative number to charge in the indictment. That's what happened here, which is there were a number of different mailings, each of which could have been— I suppose I just need to be even more candid than I've been with you in order to make my question clear. When I see something that's charged funny, I figure either they're trying to hide the ball and there's something wrong with the charge, or they gave it to some kid, it was the first indictment he ever wrote, and he messed up, and they're hoping that we rescue their indictment from the fire. Your Honor, I'm an officer of the court. I'm not aware of anything, as Your Honor put it, that's funny about why the case was charged. You don't think it's funny that a mail fraud is charged when it's not a mailing that the defendant made? I think that it would have been easier. We wouldn't be here having this colloquy had the case been charged in that fashion. I can speculate or posit, and I was not the person who drafted this indictment, why the case may have been charged this way, and it may simply be a matter of fact that the return envelope was not retained to show that the actual mailing occurred. I don't want to state that as fact because I don't know. So what? That wouldn't hurt it any. Well, it would hurt on the first part, which is we must show that a mailing occurred, and that's the first part of the argument this morning. And that is, of course, as we've heard this morning, something that we need to show to the jury that a mailing occurred. But you did charge this as counts. Are you talking about count six or count four? I guess I was responding to the court's general question about count six. But all of these, I mean, what I would emphasize to the court is what is, the court uses the word conceive, but conceive is to get through the scheme. That's the essential part of the scheme is to complete and go through each of the steps of the adjudication process. And to charge it this way, I think the question is just how did he conceive that the mail would be used? And I'm not sure if you've got more to say about that, but that's our question. Yeah, and what my response would be, I don't think the standard is conceive that the mailing would occur. I think that there's two separate issues. It's conceiving the scheme, and the defendant must have some reasonable belief that mailings will occur. And then, of course, the standard is it's incident to an essential part of the scheme. Thank you, counsel. Judge, do you have more questions? I think my colleagues are going to let you go. Oh, I have one. Well, you didn't get away fast enough. Why didn't you cite Brown? I was not aware of it, Your Honor. Madam Clerk, can we put another minute on the clock, please? The government just said that the standard is that a defendant must conceive of a scheme and then have some reasonable belief that a mailing would occur. That reasonable belief goes to whether the causation of a mailing element has been met, not to whether it's for the purpose of executing the fraudulent scheme. Count six, the defendant did not respond to that application summary. If the defendant had gone and then affirmed those statements or made them even worse, that might advance the scheme. And count four, I agree with you, Judge Kristen, that as to Ms. Hayes, the scheme had ended. I don't know if the court has any further questions about any of the other issues that were raised in the briefing. I don't think we have any further questions. Thank you both for a very helpful argument. That will conclude our arguments for today. Thank you.
judges: Wallace, Kleinfeld, Christen